## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH SIMMONS, | : | CIVIL ACTION FILE |
| | : | |
| Plaintiff | : | NO. _____ |
| | : | |
| V. | : | |
| | : | **JURY TRIAL DEMANDED** |
| CLAYTON COUNTY SCHOOL | : | |
| DISTRICT AND JUDY HELMS | : | |
| IN HER INDIVIDUAL CAPACITY | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

COMES NOW Plaintiff Joseph Simmons and hereby submits this Complaint against the above-named Defendants on the following grounds:

## NATURE AND PURPOSE

### 1.

This is a lawsuit is brought for racial and retaliatory discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981, which latter claim is brought under 42 U.S.C. Section 1983 and for retaliation under the Georgia Whistleblower Protection Act, O.C.G.A. Section 45-1-4.  Plaintiff seeks all relief available.

1

## JURISDICTION AND VENUE

2.

This Court has personal jurisdiction over Defendants and has subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. Section 1331 and 1343.

3.

All actions alleged herein occurred within the Atlanta Division of the Northern District of Georgia. Venue in this district is proper for the Defendants pursuant to 28 U.S .C. § 1391(b) & (c).

## PARTIES

4.

Plaintiff Joseph Simmons is a citizen and resident of the State of Georgia and is entitled to bring actions of this kind and nature.

5.

The Defendant CLAYTON COUNTY SCHOOL DISTRICT (the "District") is a duly incorporated school district located in Clayton County, State of Georgia. The District is subject to the jurisdiction of this court, and may be served with this Complaint and Summons in accordance with O.C.G.A. § 9-11-4, through service on

the Superintendent Dr. Morcease J. Beasley, or his designee, at 1058 Fifth Avenue, Jonesboro, GA 30236.

6.

Defendant Judy Helms is a former employee of Clayton County School District.  Ms. Helms is sued in her individual capacity.  Ms. Helms may be served with process at her place of employment or at her residence, the locations of which are presently not known to Plaintiff.

## FACTUAL ALLEGATIONS GIVING RISE TO PLAINTIFF'S CLAIMS

7.

Plaintiff began working with Defendant District on or about March 5, 2019, as a Print Specialist II. At the time of his hire, Defendant Helms told Plaintiff that she had checked with Teacher Retirement System and had confirmed that he would receive credit for his military service towards his retirement eligibility, which would have made him eligible for retirement after only ten years with the District. Defendant Helms' statement to Plaintiff was false, as she had not actually checked with TRS.  Plaintiff also informed Defendant Helms that he had a vacation planned, that he had put a deposit down on a place to stay, and asked that he be allowed to take the time off without pay, as he would not have earned any vacation at that point. Defendant Helms agreed.

8.

Immediately after he began working, Plaintiff noticed that the white hourly employees, Tammy LNU and Phyllis LNU, were allowed to go to lunch with Defendant Helms or pick up lunch to eat with Defendant Helms without clocking out. All of the non-white hourly employees were required to clock out for lunch and any other time that they left the office.

9.

Defendant Helms would inexplicably require the air conditioning in the press room – where only non-white employees were stationed full time – to be set on a high temperature. The combination of the lack of air.

10.

From the beginning of Plaintiff's employment, he noticed a broken water line in the press room which was spewing water near and sometimes on an electrical outlet, creating a potentially very dangerous condition, in which an employee could have fallen as a result of the water which collected on the floor or been electrocuted as a result of the water on the spraying in the electrical outlet. Plaintiff repeatedly complained to Defendant Helms, who would put him off by claiming she would contact someone to fix it, which she did not do.

11.

4

On several occasions, Defendant Helms held meetings during which she would address the non-white (5 Black and 2 Cambodians) employees as "you people" as if she were scolding children. She only directed those comments towards the non-white employees, while Tammy LNU and Phyllis LNU stood with Defendant Helms.

12.

Plaintiff asked why no one had ever gone over Defendant Helms head to complain. He was told by an employee, who he believes was either Tim Ferrell or Ray Davis, that people who complained got fired. Plaintiff was told that an employee named Patrick LNU had gone to speak to Jada Dawkins about Defendant Helms and was thereafter fired.

13.

In or around April of 2019, Defendant Helms saw Ray Davis, who is an individual with a disability, and told Plaintiff that if he "wasn't a cripple", she would have fired him a long time ago.

14.

In or around late April or early May, Defendant Helms told Plaintiff that he would not be able to take the time off, despite her prior assurance and agreement. To the best of Plaintiff's recollection, the deposit he had put down was

approximately $2,000.   This was consistent with her mistreatment of and disregard for the well-being of non-white employees, so that Plaintiff felt that he needed to bring her conduct to the attention of Human Resources.

15.

On or about May 9, 2019, Plaintiff left a voice mail message for Valerie Henson with Human Resources to complain about the racially hostile work environment.  Within a few days, Plaintiff met with Ms. Henson and told her that he and the other non-white employees were being discriminated against by Defendant Helms because of their race.  Ms. Henson cut Plaintiff off and told him that she could not help him and that Plaintiff had to go through Jada Dawkins, Chief of Communications.

16.

Plaintiff called Ms. Dawkins and left a message with her secretary, Ms. Frazier. Ms. Frazier called on May 21st and told Plaintiff that Ms. Dawkins was on vacation and that she would set up a meeting after Ms. Dawkins returned to work on Thursday, May 23rd. Plaintiff then met with Ms. Dawkins on June 2, 2019.  Plaintiff told Ms. Dawkins that he had spoken to Ms. Henson with Human Resources, which upset Ms. Dawkins.  Ms. Dawkins told Plaintiff that he should have come to her first, which is not stated in and may be contrary to Board of Education policy.  Ms.

Dawkins did not inform Plaintiff that he had the option of going to the Division of Equity and Compliance, which had jurisdiction over complaint of racial discrimination and retaliation.

17.

Plaintiff then informed her of the racially discriminatory and dangerous actions events set forth above.  He told Ms. Dawkins that he and other non-white that he was being discriminated against on the basis of his race the terms and conditions of employment.  Immediately after he finished, Ms. Dawkins, without any prior warning, told Plaintiff that she had invited Defendant Helms to the meeting.  Defendant Helms then joined the meeting, at which point Dawkins read off the list of discriminatory and dangerous conditions about which he had told her. Plaintiff was then excused from the meeting and Dawkins and Defendant Helms met without his presence.

18.

The only actions taken by Dawkins in response to Plaintiff's complaints of systemic discrimination and harassment because of race was to permit Plaintiff to take the vacation he had requested and to fix the hazardous condition caused by the broken water line spewing water in the floor and on an electrical connection.

19.

Immediately after his complaint, Defendant Helms began engaging in a campaign of retaliation against him. That morning, Defendant Helms had the maintenance staff remove chairs from the Press Room that employees had used when they ate lunch in the building. When questioned by other employees, the maintenance supervisor, Paul LNU, told the group of employees, including Plaintiff, that Defendant Helms had directed that morning that the chairs be removed.

20.

In or about June until the last day of Plaintiff's employment, Defendant Helms prohibited Plaintiff from working overtime, although numerous other employees worked overtime including on weekends. Although Plaintiff asked Defendant Helms to be permitted to work overtime, Defendant Helms did not permit him to work overtime for the remainder of the time he was employed.

21.

In or around June of 2019, Plaintiff clocked out for lunch and, upon returning, all of the time cards were missing. Defendant Helms claimed that she had the time cards because she was "changing" and "correcting" the time cards. When Plaintiff asked for his time card, Defendant Helms stated that the time card was lost somewhere on her desk and to get a new time card and clock back in. However, the time card in question had several days of Plaintiff's work hours recorded. The time

card was never located by Defendant Helms and, on information and belief, Plaintiff was not paid for the days on the "lost" time card.

22.

On or about July 6th, Brad LNU, the other white employee, returned to work carrying an AR-15.  On information and belief, Brad had recently resigned and numerous employees expressed to Plaintiff that they were frightened by Brad coming to the back door carrying a semi-automatic rifle after he was no longer employed.  This incident resulted in the policy being called and an investigation conducted.

23.

In August, Plaintiff (who had brought a collapsible chair from home) was sitting down on his normal ten minute break, as had been customary to Plaintiff's personal knowledge since he began working and, according to other employees, for a period of years.  Defendant Helms entered the room, saw Plaintiff and told him that "as of today" the only breaks employees would be permitted would be lunch breaks and restroom breaks.  Plaintiff was on his cell phone playing a game during his break.  Helms told him that, as of that day, no cell phones were allowed to be used by employees during the work day. Within a few days, she held a meeting and told other employees what she had told Plaintiff, i.e., that there were no more rest

9

breaks and that cell phone usage was not allowed during the work day.  This was typical of the retaliatory actions taken by Helms, in that she would first apply them to Plaintiff and later inform the other employees, in an apparent effort to cause other employees to resent him.

24.

Despite Defendant Helms directive that there would be no more breaks and no cell phone usage, Tammy LNU and Phyllis LNU continued to use cell phones during the work day, both to make and receive personal calls and to listen to music. They also continued to take one and a half to two hour lunch breaks, without clocking out.  Tammy LNU even went grocery shopping and store her groceries in the refrigerator in the kitchenette in the office.  Her actions were open and obvious and known to Defendant Helms.

25.

In or around the end of July or beginning of August, Defendant Helms began directing Plaintiff to print jobs that  were substandard in quality.  Plaintiff frequently objected to the poor quality of the work – the vast majority of which was created by Phyllis LNU – and was overruled and directed to print the jobs over his objection. Thereafter, Defendant Helms would either personally or through her subordinates direct Plaintiff to redo the work in question.

26.

As a result of the continued harassment, Plaintiff contacted Superintendent Morcease Beasley directly.  Mr. Beasley referred him to the office of Equity and Compliance, to which Plaintiff should have been directed by Ms. Dawkins or Defendant Helms

27.

The effect of the Defendants' conduct was extremely harmful to Plaintiff both emotionally and physically.  Plaintiff began having constant stress headaches throughout the work day, which ended when the work day was over.  Plaintiff's wife was so concerned about his well-being and demanded that Plaintiff leave his employment with the District.  As a result of the continuous on-going racial and retaliatory discrimination, Plaintiff was constructively discharged on September 22, 2019.

28.

On September 30, 2019, Defendant District's Division of Equity and Compliance completed its investigation of Plaintiff's Complaint and found that Defendant Helms had engaged in the conduct of which Plaintiff had complained, stating, in part:

> The complainant alleged the Respondent conducted themselves in an unprofessional manner and gave preferential treatment to certain employees. Specifically, it was alleged that the Respondent subjected the staff to unfair/unequal treatment, discrimination, and intimidation. The investigation did substantiate the allegations.
>
> Direct witness testimony and documentary evidence regarding the allegations were carefully considered and reviewed. Based on the totality of the evidence, it is my determination that a reasonable basis exists to conclude that a violation of the Clayton County Public Schools' policy GBU-Professional Personnel Ethics and the Georgia Professional Standards Commission's Code of Ethics for Educators has occurred as presented above.

The letter stating the findings was signed by Defendant's Superintendent, who is the highest ranking official within the District, charged by statute with the supervision of the District and answerable only to the Board of Education. As a result of the matters found during the investigation, including that Defendant Helms was falsifying time to benefit white employees, Defendant Helms was terminated from her employment.

29.

Despite finding that Plaintiff's allegations were meritorious and that he had been the victim of discriminatory and intimidating treatment, Defendant District took no action to offer to restore Plaintiff to his position of employment. The letter referenced in the preceding paragraph was signed by the District's Superintendent of Schools, acting in his official capacity as Superintendent and while serving as

Superintendent and such letter was written, signed, and communicated pursuant to the Superintendent's official duties as the highest ranked employee of the District.

## CLAIMS FOR RELIEF

### COUNT ONE: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT CLAYTON COUNTY SCHOOL DISTRICT

30.

Paragraphs 1 through 28 are incorporated herein by this specific reference.

31.

Plaintiff was harassed and constructively discharged by Defendants due to his race, in violation of Title VII of the Civil Rights Act of 1964. Plaintiff filed a timely Charge of Discrimination and this lawsuit is brought within 90 days of the issuance of the Notice of Right to Sue..

32.

As a result of Defendants' conduct, he has suffered lost wages and other benefits and emoluments of employment; emotional distress and harm to his professional reputation; and other damages to be shown at trial.

## COUNT TWO: RACIAL DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 USC 1981, PURSUANT TO 42 USC SECTION 1983, AGAINST DEFENDANT HELMS

### 33.

Paragraphs 1 through 28 are incorporated herein by this specific reference.

### 34.

Plaintiff was harassed and constructively discharged by Defendant Helms due to his race, in violation of 42 U.S.C. § 1981, which claim may be brought against Defendant Helms pursuant to 42 U.S.C. Section 1983.

### 35.

As a result of Defendant Helms' conduct, Plaintiff has suffered lost wages and other benefits and emoluments of employment; emotional distress and harm to his professional reputation; and other damages to be shown at trial.

### 36.

As Defendant Helms' conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendants.

## COUNT THREE: RETALIATION IN VIOLATION OF
## O.C.G.A. 45-1-4 AGAINST THE CITY OF ATLANTA

37.

Paragraphs 1 through 28 are incorporated herein by this specific reference.

38.

Plaintiff was harassed and ultimately constructively discharged by Defendants due to his complaints of racial and retaliatory discrimination in violation of 45-1-4.

39.

Plaintiff's protected activity was a proximate cause of the harassment and retaliation that culminated in Plaintiff's constructive discharge.

40.

As a result of Defendants' conduct, he has suffered lost wages and other benefits and emoluments of employment; emotional distress and harm to his professional reputation; and other damages to be shown at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment against the Defendants as follows:

15

a)      that this Court declare that defendants' actions, policies and practices complained of herein violate the rights of plaintiff as secured by state and federal law;

b)      that plaintiff be awarded against Defendants the lost salary he would have received absent defendant's unlawful acts, including reformation of pension or other benefits ab initio, as if he had not been constructively discharged;

c)      that plaintiff be awarded appropriate compensatory damages, including damages for pain and suffering, emotional distress and damage to his good name and professional reputation, in an amount to be determined by the enlightened conscience of the jury;

d)      that plaintiff be awarded punitive damages against the individual Defendants;

e)      that plaintiff be awarded pre-judgment interest;

f)      that plaintiff be awarded his costs, out of pocket expenses, and reasonable attorneys' fees in this action;

g)      that plaintiff be awarded injunctive relief of reinstatement; reformation of pension and restoration of other benefits of employment; and other injunctive relief necessary to return him to the status quo ante;

h)      that plaintiff  be awarded such other relief as the Court deems just and

proper;

i)      and that the within action be tried by a jury.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Respectfully submitted this day, January 20, 2021.

**ORR, BROWN & BILLIPS, LLP**

/s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
*s/ Kristine Orr Brown*
Kristine Orr Brown
Georgia Bar No. 554630
P.O. Box 2944
Gainesville, GA 30503
(770) 534-1980 t
(770) 536-5910
mbillips@orrbrownandbillips.com
ATTORNEYS FOR PLAINTIFF